**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**Southern Division**

D. G. Sweigert,

                             Plaintiff,

       -against-                   **Case 2:22-cv-10642-GAD-KGA**

MULTIMEDIA SYSTEM
DESIGN, INC.
d/b/a/
Crowdsource The Truth

                          Defendant.

Plaintiff
D. G. SWEIGERT, C/O
PMB 13339
514 Americas Way,
Box Elder, SD 57719
Spoliation-notice@mailbox.org

Defendant
MULTIMEDIA SYSTEM DESIGN, INC
252 7th Avenue, Suite 6S
New York, N.T. 10001
(323)-744-7594
truth@crowdsourcethetruth.org

**REQUEST FOR JUDICIAL NOTICE**
**(RESPONSIVE TO ECF DOC. 25)**

*D. Sngt*

**July 13, 2022**

**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

## DECLARATION OF D. G. SWEIGERT

NOW COMES D. GEORGE SWEIGERT, *pro se* non-attorney to provide truthful reproductions of documents.  In the interest of judicial efficiency, the Court is requested to observe the following phrases in the attached Court order:

*BACKGROUND Plaintiff Jason Goodman is the sole owner and employee of Multimedia System Design, Inc. ("MSD"), d/b/a "Crowdsource the Truth." Am. Compl. ¶ 13.  [page 2]*

*FN 5 The Amended Complaint elides the distinction between Goodman and his company, MSD. The NATAS Action was filed only against MSD, not Goodman personally. That distinction could mean that, in addition to all the other problems with this case, Goodman lacks standing to raise some or all of the claims he brings here. Because the Court lacks subject matter jurisdiction, the Court need not wade into the issue of standing. [page 3]*

*Nor could he. A diligent review of case law in this circuit reveals that no prior plaintiff has premised an affirmative claim for relief on Section 230(c)(1). Rather, Section 230 has only been invoked as an affirmative defense. [page 7]*

Respectfully submitted on July 13, 2022.

**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

## CERTIFICATE OF SERVICE

I, hereby certify, under penalties of perjury, that a true copy of the accompanying documents

has been filed electronically forwarded with pdf copies to all parties listed below on July 13,

2022.

Jason Goodman, CEO                      ODYSEE HOLDINGS, INC.
truth@crowdsourcethetruth.org      julian@odysee.com
                                                          LBRY, INC. josh@lbry.io

**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way,**
**Box Elder, SD 57719**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/12/2022___
```

```
------------------------------------------------------------ X
JASON GOODMAN,                            :
                                          :
                        Plaintiff,        :
                                          :
        -against-                         :
                                          :
ADAM SHARP, TERRANCE O'REILLY,            :
FRANK SCHERMA, MARGARET ESQUENET,         :
NATIONAL ACADEMY OF TELEVISION            :
ARTS AND SCIENCES, INC., ACADEMY OF       :
TELEVISION ARTS AND SCIENCES, INC.,       :
                                          :
                        Defendants.       :
                                          :
------------------------------------------------------------ X
```

21-CV-10627 (VEC)

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Jason Goodman, appearing *pro se*, brings this action against numerous

defendants[1] ("Defendants") asserting claims for: (1) abuse of process in violation of 47 U.S.C. §

230; (2) unjust enrichment in violation of 26 U.S.C. § 501(c)(6); and (3) attorney misconduct

pursuant to New York Judiciary Law § 487.  Am. Compl., Dkt. 41.  Defendants have moved to

dismiss Plaintiff's Amended Complaint, arguing: (1) lack of subject matter jurisdiction pursuant

to Rule 12(b)(1); (2) lack of standing pursuant to Rule 12(b)(1); (3) failure to state a claim

pursuant to Rule 12(b)(6); and (4) that Defendants' prelitigation activity and prior litigation falls

within the scope of immunity granted under the *Noerr-Pennington* doctrine.  *See* Defs. Mem.,

---

[1]       The Defendants are the National Academy of Television Arts and Sciences, Inc. ("NATAS"), a New York
not-for-profit corporation; the Academy of Television Arts & Sciences ("ATAS"), a California not-for-profit
corporation; Adam Sharp ("Sharp"), President and CEO of NATAS; Terry O'Reilly ("O'Reilly"), Chairman of the
Board of Trustees of NATAS; Frank Scherma ("Scherma"), CEO and Chairman of the Board of ATAS; and
Margaret Esquenet ("Esquenet"), an attorney at Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP.  Am.
Compl., Dkt. 41 ¶¶ 13–19.

Dkt. 53.  Plaintiff opposes the motion.  Pl. Opp., Dkt. 68.  For the reasons that follow,

Defendants' motion is GRANTED because the Court lacks subject matter jurisdiction.[2]

## BACKGROUND

Plaintiff Jason Goodman is the sole owner and employee of Multimedia System Design,

Inc. ("MSD"), d/b/a "Crowdsource the Truth."  Am. Compl. ¶ 13.  In 2020, the National

Academy of Television Arts and Sciences, Inc. and the Academy of Television Arts & Sciences,

Inc. (collectively, "the Academies"), sued MSD for copyright and trademark infringement.  *See

generally Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc*., 551 F.

Supp. 3d 408 (S.D.N.Y. 2021) (hereinafter, "*NATAS v. MSD*" or the "*NATAS* Action").  That

case grew out of MSD's creation and production of the "Crony Awards."  *Id.* at 418.  The

"Crony Awards" was an online award show honoring countries that downplayed the COVID-19

pandemic.  *Id.*  As part of the show, MSD included an image that depicted the Academies'

Emmy Statuette but with the Statuette's atom replaced by a depiction of the COVID-19 virus

(the "Infringing Image").  *Id.*

After becoming aware of the Infringing Image, which was part of a video posted on

YouTube, the Academies issued a copyright violation notice to YouTube pursuant to the Digital

Millennium Copyright Act ("DMCA").  *Id.* at 419.  Upon learning of the notice, MSD submitted

a counter-notice challenging the removal of the video containing the Infringing Image.  *Id.*

Defendants filed suit to protect their copyright and trademark rights and ultimately prevailed.  *Id*.

at 433.[3]

---

[2]      Because the case is dismissed on jurisdictional grounds, the Court does not reach Defendants' other
asserted grounds for dismissal.

[3]      The *NATAS* Action has a long and convoluted procedural history, most of which is not relevant to the
disposition of this case.  In summary, the Academies sued MSD for trademark dilution, copyright and trademark

Plaintiff alleges that, before the *NATAS* Action was filed, Plaintiff offered to remove "all occurrences of the alleged infringement" if Defendants first withdrew their complaint to YouTube.  Am. Compl. ¶ 56.  Plaintiff alleges that it was unreasonable for the Academies, represented by Esquenet, to reject his pre-litigation offer.  *Id.*  His complaint recites other events that occurred during *NATAS v. MSD* as part of the factual background of this case.

Plaintiff commenced this action on December 13, 2021; on March 15, 2022, with leave from the Court, Plaintiff filed an amended complaint.  *See* Dkts. 1, 41.[4]  Plaintiff claims Defendants are liable for abuse of process and attorney misconduct for having initiated the prior lawsuit against MSD.[5]  Am. Compl. ¶ 1.  Plaintiff also asserts a claim for unjust enrichment.  *Id.*  On April 5, 2022, Defendants moved to dismiss Plaintiff's amended complaint, *see* Defs. Mem., which Plaintiff opposes, Pl. Opp.  On April 15, 2022, Plaintiff filed a motion for Rule 11 sanctions against Defendants.  *See* Dkt. 65.[6]

---

infringement, and defamation.  *NATAS v. MSD*, 551 F. Supp. 3d at 419.  Goodman, the sole shareholder of MSD, intervened, *pro se*, as a defendant and, with MSD, asserted counterclaims against the Academies.  *Id.*  Goodman and MSD's motion to dismiss the Academies' trademark and copyright claims based on fair use was denied.  *See id.* at 420.  Subsequently, MSD's attorney sought to be relieved, *see* Mot. to With., 20-CV-7269, *NATAS v. MSD*, Dkt. 100.  When MSD was unable to retain legal representation, a default judgment was entered against it.  Def. Judg., 20-CV-7269, *NATAS v. MSD*, Dkt. 157.  Goodman's counterclaims for declaratory judgment, violation of New York's anti-SLAPP law, and abuse of DMCA under 17 U.S.C. § 512(f) were also dismissed.  *See NATAS v. MSD*, 551 F. Supp. 3d at 433.

[4]    Plaintiff sought leave to file second and third amended complaints.  *See* Dkts. 57, 60.  This Court denied those requests without prejudice.  *See* Order, Dkt. 67.

[5]    The Amended Complaint elides the distinction between Goodman and his company, MSD.  The *NATAS* Action was filed only against MSD, not Goodman personally.  That distinction could mean that, in addition to all the other problems with this case, Goodman lacks standing to raise some or all of the claims he brings here.  Because the Court lacks subject matter jurisdiction, the Court need not wade into the issue of standing.

[6]    Plaintiff filed a Notice of Motion Seeking Sanctions Pursuant to Rule 11, *see* Pl. Mot. Sanc., Dkt. 65, just before this Court ordered that no further motions or filings could be made until Defendants' motion to dismiss was decided, *see* Order, Dkt. 67.  Thus, Plaintiff's motion for sanctions has not been fully briefed.

3

## DISCUSSION

### I.    Legal Standard

The party asserting that the Court has subject matter jurisdiction over a particular claim

has the burden of proving by a preponderance of the evidence that the court has jurisdiction.

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss

for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1),

courts "must take all uncontroverted facts in the complaint [] as true, and draw all reasonable

inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of

Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where "jurisdictional facts are placed in

dispute," however, "'the court has the power and obligation to decide issues of fact by reference

to evidence outside the pleadings, such as affidavits.'" *Id.* (quoting *APWU v. Potter*, 343 F.3d

619, 627 (2d Cir. 2003)); *see also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d

Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1)," the Court "may consider evidence outside the pleadings." (citation omitted)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally

and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of

Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks and

citation omitted). Courts are required to give *pro se* submissions "special solicitude," *Ruotolo v.

I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994), because "[i]mplicit in the right of self-representation is an

obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from

inadvertent forfeiture of important rights because of their lack of legal training," *Triestman*, 470

F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Because Goodman is a

*pro se* plaintiff, the Court construes Goodman's pleadings liberally and draws every inference in

his favor. Nevertheless, for the reasons discussed below, the Court grants the Motion to Dismiss.

4

## II.     The Court Lacks Subject Matter Jurisdiction

An action must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when the trial court lacks power to adjudicate the case.  *Biran v. JP Morgan Chase & Co.*, 2002 WL 31040345, at *1 (S.D.N.Y. Sept. 12, 2002).  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).  A district court has subject matter jurisdiction if the case arises under federal law, *see* 28 U.S.C. § 1331, or if there is complete diversity between the parties and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332.

### A.  Federal Question Jurisdiction

To successfully invoke federal question jurisdiction, claims must arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff asserts that the Court has federal question jurisdiction under the Communications Decency Act, 47 U.S.C. § 230(c)(1), and under Section 501 of the Internal Revenue Code, 26 U.S.C. § 501(c)(6).  An action presents a federal question when the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000)).  In this case, Plaintiff purports to state claims under two federal statutes — 47 U.S.C. § 230(c)(1) and 26 U.S.C. § 501(c)(6).

### 1.  47 U.S.C. § 230(c)(1)

Plaintiff asserts that the Court has subject matter jurisdiction over Plaintiff's abuse of process claim, a state-law tort, pursuant to 47 U.S.C. § 230(c)(1), which is part of the

5

Communications Decency Act ("CDA").[7]  Plaintiff argues that, under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1); *see also* Am. Compl. ¶ 20.  At its core, "[Section] 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content.'"  *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (quoting *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014)).

Liberally construed, Plaintiff alleges that Defendants abused process and engaged in attorney misconduct when the Academies sued MSD for copyright infringement in the *NATAS* Action, and that Esquenet failed in her "legal and ethical obligation" to tell her clients, the Academies, about "substantial defects" in their claims.  Am. Compl. ¶ 81.  Plaintiff argues that under Section 230(c)(1), his company, MSD, is "a provider and a user of interactive computer services," that Plaintiff is individually "a separate legal entity" from MSD, and, therefore, under Section 230(c)(1), MSD could not be sued for content provided by Plaintiff.  *Id.* ¶ 80.  Accordingly, Plaintiff argues, Defendants abused process when they brought suit against MSD because MSD is immune from liability for Goodman's infringing use of the Academies' statuette. *Id.* ¶ 81.

Defendants argue that Plaintiff fails sufficiently to allege any facts suggesting that federal question jurisdiction exists.  Defs. Mem. at 10.  According to Defendants, Section 230(c)(1)

---

[7]      Plaintiff's theory of jurisdiction is muddled.  He asserts state tort claims, *see, e.g.*, *E. Equip. & Servs. Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117 (2d Cir. 2001) (treating abuse of process as a state law claim), but he argues that those claims somehow "arise under" the Communications Decency Act or the Internal Revenue Code.

creates an affirmative defense; it does not create a cause of action. *Id.* at 11; *see also Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (discussing Section 230(c)(1)'s function of providing immunity to service providers against specific causes of action) (summary order). Thus, Defendants claim that Section 230(c)(1) was not properly invoked by Plaintiff, and that Section 230(c)(1) cannot be the basis for federal question jurisdiction in this case.

The Court agrees with Defendants. Based on Section 230(c)(1)'s plain text and subsequent judicial interpretations of it, Defendants are correct regarding the purpose of Section 230(c)(1). Plaintiff even appears to concede that Section 230(c)(1) was improperly invoked, admitting that "47 U.S.C. § 230 . . . may not have been properly referenced in the initial complaint." Pl. Opp. at 4. His concession makes sense as Plaintiff has not cited a single case in which Section 230(c)(1) has been used as a basis for an affirmative claim in federal court.

Nor could he. A diligent review of case law in this circuit reveals that no prior plaintiff has premised an affirmative claim for relief on Section 230(c)(1). Rather, Section 230 has only been invoked as an affirmative defense. *See, e.g.*, *LeadClick Media, LLC*, 838 F.3d at 162 (defendants claiming immunity under Section 230(c)(1) against plaintiff's claim of deceptive marketing practices); *La Liberte v. Reid,* 966 F.3d 79, 83 (2d Cir. 2020) (social media website claiming immunity under Section 230(c)(1) against plaintiff's defamation claim); *Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019) (defendant claiming immunity under Section 230(c)(1) against plaintiffs' federal anti-terrorism claims stemming from posts made by terrorist group Hamas on defendant's social platform); *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015) ("Preemption [from liability arising from state or local law] under the Communications Decency Act is an affirmative defense.") (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)).

7

The fact that Section 230 has only been used as an affirmative defense is consistent with Congress's intent at enactment. *See Alexander v. Sandoval,* 532 U.S. 275, 276–77 (2001) (finding that the absence of explicit rights-creating language supports congressional intent *not* to create a private right of action within a statute); *see also* Valerie C. Brannon & Eric N. Holmes, Cong. Rsch. Serv., R46751, Section 230: An Overview (2021). The purpose of Section 230 generally is to shield interactive computer services from liability based on content provided by third parties in the interest of preserving free speech online. *See, e.g.*, *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 699 (S.D.N.Y. 2009) ("Whether wisely or not, Congress made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others.") (quoting *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998)); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("By its plain language, [Section] 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."); *Force v. Facebook, Inc.*, 934 F.3d 53, 57 (2d Cir. 2019) (referring to Section 230(1) as an "affirmative defense").

Here, Plaintiff attempts to use Section 230 as a sword on which his state-law abuse of process claim would be predicated. But Congress has not expressly provided for any federal cause of action under Section 230. Plaintiff's invocation of Section 230(c)(1) as a basis for federal jurisdiction lacks any textual or precedential basis and is belied by Section 230(c)(1)'s clear legislative purpose to immunize interactive computer services from civil liability for content created by third parties, not to create a cause of action for content creators.

Because Plaintiff does not have a cause of action under the CDA, Section 230(c)(1) cannot be the basis for federal question jurisdiction.

### 2. 26 U.S.C. § 501(c)(6)

Plaintiff also asserts that the Court has subject matter jurisdiction pursuant to 26 U.S.C. § 501(c)(6), which is part of the Internal Revenue Code. Am. Compl. ¶ 20. Section 501(c)(6) provides that certain nonprofit organizations shall be exempt from taxation, and that "no part of the net earnings" of any such organization may "inure[]to the benefit of any private shareholder or individual." 26 U.S.C. § 501(c)(6).

Plaintiff argues that the Academies are tax-exempt organizations under Section 501(c)(6), and because a corporation may only sue in accordance with "the law under which it was organized," Fed. R. Civ. P. 17(b)(2), the Academies' previous suit against Plaintiff violated Section 501(c)(6) insofar as that litigation was intended to inure to the benefit of Sharp and Esquenet. *See* Am. Compl. ¶ 85. Further, Plaintiff claims that the previous litigation contradicted NATAS's authorized purpose — that is, to "advance the arts and sciences of television, and [to] foster creative leadership in the television industry for artistic, cultural, educational, and technological progress." *See* Am. Compl. ¶ 63. Plaintiff also singles out Sharp by claiming that he, *inter alia*, violated the laws under which the Academies are organized by "unilaterally act[ing] without the knowledge or consent of board chairman and CEO Frank Scherma" when the Academies brought their lawsuit against MSD. Am. Compl. ¶ 31. Plaintiff argues further that Sharp wrongfully used his role as CEO of NATAS in the *NATAS* Action "in furtherance of his own personal political goals and those of his private for-profit business," referring to Sharp's privately-owned company, "Sharp Things LLC." Am. Compl. ¶ 35. Plaintiff alleges that the Academies' previous copyright infringement suit against MSD was fueled by Sharp's desire to stop Plaintiff from broadcasting on his YouTube channel because Plaintiff was a "popular conservative social media influencer." Am. Compl. ¶ 54.

In response, Defendants argue that federal question jurisdiction cannot be predicated on Section 501(c)(6) because that statute does not create a federal cause of action. *See* Defs. Mem. at 11. Defendants are correct.

Here again, the statutory text of Section 501(c)(6) does not support Plaintiff's assertion that it can be the basis for a federal cause of action.[8] When Congress explicitly provides a private right of action in a statutory provision to enforce one section of a statute, the omission of similarly explicit rights-creating language elsewhere implicitly denies a private right of action to enforce other sections. *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 433 (2d Cir. 2002) ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."). The Internal Revenue Code expressly provides that "the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury." 26 U.S.C. § 7801(a)(1). While other sections of the Internal Revenue Code expressly enumerate causes of action that can be brought by individuals other than the Secretary of the Treasury, *see, e.g.*, 26 U.S.C. § 7426 (providing a list of permissible civil actions by persons whose property was seized to satisfy the tax liability of another); 26 U.S.C. § 7433 (allowing individual taxpayers to sue for damages for unauthorized collection actions), Section 501(c)(6) includes no such language. Instead, it merely enumerates the activities and classifications of organizations eligible for tax exemptions. 26 U.S.C. § 501(c)(6). Congress's silence on the existence of a private cause of action under 501(c)(6) makes clear that it did not intend to create

---

[8] Plaintiff appears to concede that Section 501(c)(6) was improperly invoked, stating that "[Section] 501(c)(6) may not have been properly referenced in the initial complaint." Pl. Opp., Dkt. 68 at 4. Further, as was the case with Plaintiff's claim under 47 U.S.C. § 230(c)(1), Plaintiff fails to cite any cases in which a plaintiff used Section 501(c)(6) as the basis for a federal cause of action.

10

one.  *C.f. Nash v. Lee Memorial Health Sys.*, 2005 WL 2043642, at *5 (M.D. Fl. Aug. 25, 2005)

(finding that "[p]laintiff's claims in relation to Section 501(c)(3) must fail" because Section

501(c)(3) "merely lists the requirements an entity must satisfy in order to qualify for tax exempt

status").  Accordingly, 26 U.S.C. § 501(c)(6) cannot be the basis for federal question jurisdiction.

### B.  Diversity Jurisdiction

Although Plaintiff has not properly invoked federal question jurisdiction, this Court could

have subject matter jurisdiction if the requirements for diversity jurisdiction were met.  A federal

court may exercise diversity jurisdiction over a civil action in which the amount in controversy

exceeds $75,000 and the action is between "citizens of different States."  28 U.S.C. § 1332(a)(1).

It is black-letter law that "complete diversity," in which the citizenship of each plaintiff is

diverse from the citizenship of each defendant, must exist for a district court to exercise diversity

jurisdiction over an action.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *E.R. Squibb &*

*Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998).  A corporation is

deemed to be a citizen of the state in which it is incorporated and the state in which it has its

principal place of business.  28 U.S.C. § 1332(c)(1).  "A corporation's principal place of business

under § 1332 is 'the place where a corporation's officers direct, control, and coordinate the

corporation's activities.'"  *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016)

(quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010)).

Plaintiff, a New York citizen, acknowledges that the parties in the present case are not

diverse.  Am. Compl. ¶ 17 (alleging that NATAS is "a New York 501(c)(6) not-for-profit

corporation").  As a New York corporation with its principal place of business in New York,

NATAS is a citizen of New York, making it non-diverse from Plaintiff and destroying diversity.

*See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d

11

Cir. 2012). As such, this Court lacks diversity jurisdiction because complete diversity does not

exist. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).[9]

### III.  Granting Leave to Amend Would Be Futile

Leave to amend should be freely granted to a *pro se* litigant unless it is clear that no valid

claim can be stated. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)

("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim might

be stated." (quotation marks and citations omitted)). Plaintiff attempted to remedy the lack of

diversity jurisdiction in his proposed Second Amended Complaint by removing NATAS as a

defendant, calling it a "passive participant" in the prior lawsuit against MSD. Pl. Opp. at 3.[10]

But even if Plaintiff were to amend his complaint to drop NATAS as a party, thereby creating

complete diversity between parties, amendment would be futile because even a liberal reading of

Plaintiff's complaint provides no indication that he can state a claim upon which relief could be

granted.[11]

### A.  Abuse of Process

Under New York law, abuse of process has three elements: (1) regularly issued legal

process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3)

use of the process in a perverted manner to obtain a collateral objective. *Curiano v. Suozzi*, 63

---

[9]  Because this Court lacks subject matter jurisdiction over any claim in this case, the Court has no basis for exercising supplemental jurisdiction over Plaintiff's state-law claims of abuse of process, unjust enrichment, and attorney misconduct. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

[10]  Plaintiff's motions to file second and third amended complaints (Dkts. 57, 60) were denied without prejudice on April 15, 2022, because the motions were untimely filed. *See* Order, Dkt. 67.

[11]  Even if granted leave to amend, Plaintiff would not be able to state a claim under either of the federal statutes he attempted to invoke, as discussed *supra*. Thus, Plaintiff's remaining claims that he could theoretically bring are state law claims of abuse of process, unjust enrichment, and attorney misconduct. Those claims, however, cannot be cured by amendment, as discussed further below.

N.Y.2d 113, 116 (1984). The New York Court of Appeals has made clear that this tort requires the use of legal process to unlawfully interfere with one's person or property. "The institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id*. (citation omitted). Moreover, "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Id*. at 117 (citation omitted).

To the extent comprehensible, Plaintiff alleges, *inter alia*, that the Academies "abused the civil legal process" with the intent to "financially overwhelm Goodman . . . by suing MSD" in *NATAS v. MSD*. Am. Compl. ¶ 4. Plaintiff alleges that the Academies' previous suit was driven by an "ulterior motive" and "improper purpose to penalize plaintiff . . . because he is a popular conservative social media influencer," and, in suing MSD, the Academies acted contrary to the purpose of the law. Am. Compl. ¶¶ 4, 6, 54.

Plaintiff's abuse of process claim falls well short of the requisite pleading standard. As in *Curiano*, Plaintiff's complaint alleges only that the plaintiffs in the *NATAS* Action were improperly motivated, not that they misused the civil litigation process. *Cf. Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO*, 38 N.Y.2d 397 (1975) (finding abuse of process when an attorney issued subpoenas to 87 teachers during a dispute between the union and the school district and refused to stagger their court appearances, thereby forcing the district to hire scores of substitute teachers to avoid a complete shutdown of schools). Even if Defendants harbored some ill will toward Plaintiff as the principal of MSD, they nonetheless had every right to bring a lawsuit to protect their intellectual property; Plaintiff's allegations do not suggest otherwise. Further, even if the Academies intended to "financially overwhelm" Plaintiff by suing his company, bad motive alone is insufficient to support an abuse of process claim. *See Hauser v. Bartow*, 273 N.Y. 370,

13

374 (1937) ("Every one [sic] has a right to use the machinery of the law, and bad motive does not defeat that right.").[12]

    Moreover, the fact that Defendants who were plaintiffs in *NATAS v. MSD* prevailed in their prior suit against MSD severely undermines the claim that they abused process when vindicating their rights in federal court. It is generally understood that a winning lawsuit is "a reasonable effort at petitioning for redress and therefore not a sham." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993).

    In short, Plaintiff's abuse of process claim would fail, even if he could establish subject matter jurisdiction by dropping NATAS as a defendant.

### B. Unjust Enrichment

    Under New York law, a claim for unjust enrichment requires that "'(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (citations omitted). The "essence" of such a claim "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)). While the plaintiff "need not be in privity with the defendant to state a claim for unjust enrichment," neither can the relationship between the parties be "too attenuated to support such a claim." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007); *see also Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (an unjust enrichment claim "requires some type of direct dealing

---

[12]    Although the Amended Complaint is being dismissed for other reasons, and a bad motive alone cannot sustain a claim for abuse of process, the Court notes that Plaintiff's factual allegations regarding Defendants' improper motives for bringing *NATAS v. MSD* are entirely conclusory.

or actual, substantive relationship with a defendant" (quoting *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997)));  *Lopez v. BigCommerce, Inc.*, 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017) (dismissing an unjust enrichment claim for failure to "allege any connection or relationship . . . that could have caused any reliance or inducement"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d at 182 (affirming the dismissal of plaintiff's unjust enrichment claim because "there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement").

Plaintiff's claim that Defendants were unjustly enriched in the Academies' suit against MSD in *NATAS v. MSD* cannot be cured by amendment as there is no relationship between the parties sufficient to support an unjust enrichment claim.  *See* Am. Compl. ¶ 12.  Even liberally construed, Plaintiff's papers make clear that the only relationship he shares with Defendants is that of a party-opponent in civil litigation.  Such an adverse legal relationship hardly qualifies as a relationship that "could have caused reliance or inducement."  *Mandarin Trading Ltd.*, 16 N.Y.3d at 182.  Second, Plaintiff has not and cannot allege that Defendants received any "money or benefit" at the expense of Goodman.  The judgment in *NATAS v. MSD*, *see* Def. Judg., 20-CV-7269, *NATAS v. MSD*, Dkt. 157, was an injunction and an award of attorneys' fees against MSD, not against Goodman.[13]  Although the Court sanctioned Goodman for violating the protective order in the *NATAS* Action, the sanction was non-monetary and conferred no financial or other benefit on any of the Defendants in this case.  *See* Sanc. Order, 20-CV-7269, *NATAS v. MSD*, Dkt. 156.

---

[13]     The award of attorneys' fees was subject to an inquest on the amount.  NATAS has never sought an inquest or made any further attempt to collect attorneys' fees from MSD.

In short, Plaintiff fails to state a claim for unjust enrichment claim, nor could he even if granted leave to amend.

## C.  New York Judiciary Law § 487

The third claim in the Amended Complaint is that Defendant Esquenet engaged in attorney misconduct; this claim also cannot be cured by amendment.[14]  Plaintiff seeks to recover treble damages under New York Judiciary Law § 487.  That statute imposes civil liability on any attorney who "[is] guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  N.Y. Judiciary Law § 487.  Many courts have required a plaintiff to show that the attorney engaged in a "chronic, extreme pattern of legal delinquency," *see, e.g.*, *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 228 (1st Dep't 1999), while others have held that a single intentionally deceitful act will suffice, *see*, *e.g.*, *Izko Sportswear Co. v. Flaum*, 25 A.D.3d 534, 537 (2d Dep't 2006).  "Allegations regarding an act of deceit or intent to deceive must be stated with particularity."  *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 164 A.D.3d 635, 637 (2d Dep't 2018); *see also Armstrong v. Blank Rome LLP,* 126 A.D.3d 427 (1st Dep't 2015) (plaintiff alleged attorney misconduct with sufficient particularity by detailing numerous acts of deceit throughout the course of their representation of plaintiff).

The case law on attorney misconduct claims confirms that, even construing the facts in the light most favorable to Plaintiff, Plaintiff's allegations against Esquenet do not make out a valid claim for attorney misconduct.  Plaintiff broadly claims that Esquenet was deceptive when she stated during the course of the *NATAS* Action that Sharp's privately-owned company, "Sharp Things," was inactive.  Plaintiff alleges that Esquenet made that misrepresentation to hide

---

[14]     The Amended Complaint does not specify that this claim is only against Esquenet, but she is the only Defendant who is alleged to be an attorney, and the factual allegations are that her conduct deceived NATAS, ATAS, and Goodman.

16

Sharp's "ulterior political motive" and to "disguise [Sharp and Esquenet's] malicious intent" in the *NATAS* Action. Am. Compl. ¶ 89. Even if true, Plaintiff fails to allege with sufficient particularity any manner in which Esquenet's representation that Sharp Things was inactive was made to intentionally deceive the Court or Plaintiff. Rather, Plaintiff makes conclusory allegations that Esquenet "knew it could be fatal . . . if the Court learned [Sharp] had a politically partisan, for-profit consulting firm that might be motivating improper decisions."[15] Am. Compl. ¶ 89. There are no plausible factual allegations, nor could there be, that the Court's knowledge of Sharp's political leanings could have had any impact in the prior litigation.[16]

In short, Plaintiff's state law claims cannot be cured by further amendment.[17]

### D. Motion for Sanctions

On April 15, 2022, Plaintiff filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 in connection with Defendants' alleged use of Plaintiff's digital signature on a court filing without

---

[15] Despite Goodman's repeated attempts to make the *NATAS* Action about Sharp, the case was largely a straightforward copyright and trademark case as to which Sharp's political leanings were entirely irrelevant. The complaint in the *NATAS* Action did include a defamation claim. *See* Am. Compl., No. 20-CV-7269, *NATAS v. MSD*, Dkt. 62. In that claim, the plaintiffs asserted that MSD had libeled them by, *inter alia*, stating that "Mr. Sharp is abusing his position as President of NATAS by carrying out Democratic Party objectives as a 'partisan political operative.'" *Id.* at 17. While that allegation touches on Sharp's political leanings, the sting of the defamation was that Sharp was misusing his position at NATAS for political reasons. Whether Sharp had a private business was neither here nor there.

[16] Plaintiff's remaining allegations regarding the enforcement of the protective order in place in the prior litigation are similarly bereft of the sort of deceit and collusive conduct required to make out an attorney misconduct claim under New York law. So, too, is Plaintiff's allegation that Defendants affixed Plaintiff's digital signature to a court filing in the present case without Plaintiff's consent. Pl. Opp. at 4–5; *see also* Defs. Reply, Dkt. 69 at 3–4; Heavner Decl., Dkt. 70, Exs. C, E. Based on the filings, the Court gleans that this was, at worst, a mere oversight by Esquenet's counsel — not a commission of attorney misconduct by Esquenet herself.

[17] Evaluating Plaintiff's proposed second and third amended complaints under the standard established by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), confirms that leave to amend would be futile. Plaintiff's proposed Second Amended Complaint disentangles Plaintiff's unjust enrichment claim pursuant to 26 U.S.C. § 501(c)(6) and instead raises it as a claim under 47 U.S.C. § 230, *see* SAC, Dkt. 57 ¶¶ 109–12, as well as under New York Judiciary Law § 487, *see* SAC ¶ 121, but he does not include any new factual allegations that would make any of the claims plausible. Nor does Plaintiff state a plausible claim in his proposed Third Amended Complaint, in which Plaintiff alleges that a non-party, David George Sweigert, provoked litigation between Plaintiff and Defendants. *See* TAC, Dkt. 60.

17

Plaintiff's consent. Pl. Mot. Sanc., Dkt. 65. Under Rule 11, an attorney who presents a filing to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing is not presented for an improper purpose, the legal contentions are nonfrivolous and supported by existing law, and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1).

Here, Plaintiff did not comply with Rule 11's safe-harbor provision. *See* Fed. R. Civ. P. 11(c)(2) (requiring that a Rule 11 motion must be served at least 21 days prior to filing to allow the opposing party an opportunity to withdraw the challenged claim); *see also Castro v. Mitchell,* 727 F. Supp. 2d 302, 304 (S.D.N.Y. 2010) (denying defendant's Rule 11 motion on procedural grounds because, *inter alia*, defendant failed to wait 21 days until after service of the motion on plaintiff before filing it). Plaintiff filed his motion for sanctions on April 15, 2022, *see* Pl. Mot. Sanc., and served Defendants with a copy of the motion on April 15, 2022, *see id.*, Ex. 1. Therefore, the Court denies the Plaintiff's request for Rule 11 sanctions.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in full.  The

Court lacks subject matter jurisdiction over Plaintiff's claims, and leave to amend would be

futile.  The Clerk of Court is respectfully directed to terminate any open motions and close the

case.  The Clerk of Court is also respectfully directed to mail a copy of this order to Plaintiff and

note the mailing on the docket.


**SO ORDERED.**

**Date:  July 12, 2022**
**New York, New York**

_____
      **VALERIE CAPRONI**
      **United States District Judge**